# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| ARCTIC CAT INC., ARCTIC CAT SALES INC., and TEXTRON SPECIALIZED VEHICLES INC., | Case No. 19-CV-00873 (NEB/LIB) |
| Plaintiffs, | |
| v. | ORDER ON DEFENDANTS' MOTIONS TO DISMISS |
| SPEED RMG PARTNERS, LLC, ROBBY GORDON, and TODD ROMANO, | |
| Defendants. | |

This case is a business relationship dispute over a contract for the development and sale of side-by-side off-road vehicles. Immediately following an unsuccessful mediation, Plaintiffs (collectively "Arctic Cat") filed suit in this district, alleging, among other claims, breach of contract and declaratory judgment. Less than two hours later, Defendants (collectively "Speed RMG") filed suit in the Central District of California, alleging breach of contract and other claims. Speed RMG argues that the Court should dismiss Arctic Cat's complaint for several reasons, including the first-filed rule, lack of personal jurisdiction, improper venue, standing, and failure to plead with particularity. Because compelling circumstances exist to deviate from the first-filed rule, the Court grants Speed RMG's motion, and orders the case be transferred to the Central District of California.

## BACKGROUND

In July 2015, Arctic Cat Sales Inc. entered into an Agreement with Speed RMG, in which Speed RMG agreed to provide designs of side-by-side off-road vehicles that Arctic Cat Sales would manufacture and sell, with Speed RMG receiving royalties in return. [ECF Nos. 1 ("Compl.") ¶ 19; 1-1, Ex. 1 ("Agreement").] Throughout the parties' relationship, each has accused the other of violating the Agreement. After Speed RMG sent Arctic Cat a formal notice of default, these disagreements culminated in a brief mediation in March 2019. Each party walked out of the mediation and almost immediately filed suit—Arctic Cat in Minnesota, and Speed RMG in California. Arctic Cat won the race to the courthouse by less than two hours, and thus argues the case should remain in Minnesota. Speed RMG argues that Arctic Cat's filing was simply a pre-emptive strike designed to deprive Speed RMG of its choice of forum, and thus argues for the complaint to be dismissed so that the parties can go forward in California. To understand the parties' arguments in the context of the first-filed rule, it is necessary to review the disagreements leading to the March 2019 mediation, detailed below.

<u>Chronology of the Relationship and Breach Allegations</u>

The parties first clashed in September 2016 over Speed RMG's alleged failure to assign patent applications to Arctic Cat, as Arctic Cat asserted was required under the Agreement. [ECF No. 43 ("Okerlund Decl.") ¶ 7, Ex. A.] A month later, Arctic Cat refused Speed RMG's request to sign a separate "Intellectual Property Assignment Agreement"

2

for the patents to be assigned. (*Id*. ¶ 7, Ex. A.) Arctic Cat contended that this separate agreement was unnecessary, since the Agreement already set forth the parties' obligations on assignment. (*Id*. Exs. A-B.) After Arctic Cat declined to sign the second agreement, Speed RMG articulated its "concerns about Arctic Cat's intentions for payment of royalties." (*Id*. Ex. C at 10.)

The second issue causing friction in 2016 was Speed RMG's alleged failure to provide proper CAD models and drawings for their designs, as well as its alleged failure to identify what designs were "novel." Arctic Cat's counsel complained of these issues to Speed RMG, stressing that identifying novelty in designs was critical, and "the key to ensuring that [the Speed RMG parties] are paid every royalty they are due under the contract, just as it is key to ensuring that Arctic Cat is not forced to pay royalties for things Arctic Cat employees invented or things that are already known and in the public domain." (*Id*. Ex. C at 2.)

The third issue raised by Arctic Cat in 2016 was an allegation that Speed RMG was using Arctic Cat trademarks without authorization. (*Id*. ¶¶ 10, 12.) After several email exchanges about these issues, the parties met in Minnesota near the end of 2016. (*Id*. ¶ 11); [ECF No. 49 ("Nichols Suppl. Decl.") ¶ 8.] Speed RMG alleges that at the meeting, the parties also addressed Speed RMG's growing criticisms of Arctic Cat for "its failure to produce vehicles as required, its failure to have prosecuted patents as required by the

Agreement, its failure to have acknowledge novelty of the designs, and its failure to pay contemplated royalties." (Nichols Suppl. Decl. ¶ 8.)

In the month after the December 2016 meeting, Speed RMG sent Arctic Cat additional information about the novelty of its designs and renewed its request that Arctic Cat acknowledge the designs as novel. (*Id*. ¶ 9.) Arctic Cat did not respond until August 2017, when it denied novelty of the designs. (*Id*. ¶ 10, Ex. 1.)

Throughout 2017, Speed RMG remained unhappy with Arctic Cat's performance, and in March, it communicated in writing what it viewed was a "history of Arctic Cat performance failures." [ECF No. 27 ("Nichols Decl.") ¶ 7, Ex. 1.] These include not only failure to acknowledge novelty for Speed RMG designs, but also failure to meet published vehicle release dates, failure to proceed with intended vehicle sales and royalty sales contemplated by the Agreement, and failure to cooperate in building race vehicles. (*Id*.) "As it now stands, we are nearly 20 months into this 60 month agreement and Arctic Cat has yet to sell a single vehicle from which we would receive royalties under the agreement. In the meantime, we have worked days, nights, and weekends to meet our deadlines and perform our obligations." (*Id.* Ex. 1 at 2.) In December 2017, the parties met again to discuss their relationship. By then, Textron Specialized Vehicles ("TSV") had acquired Arctic Cat Inc. [ECF No. 44 ("Tidwell Decl.") ¶¶ 5, 9; Nichols Suppl. ¶ 12.]

Months after that meeting, in March 2018, Arctic Cat provided Speed RMG with a description of the claims it considered novel. (Nichols Suppl. Decl. ¶ 14, Ex. 2.) Speed

4

RMG disagreed with the scope of the identification, and its counsel Steve Nichols continued notifying Arctic Cat of its alleged breaches, explicitly stating that "Arctic Cat remains in breach of several of its material contractual obligations." (Nichols Decl. ¶ 7, Exs. 2-3.) The record contains no indication that Arctic Cat's counsel responded, but the parties met again in June 2018. (Nichols Suppl. Decl. ¶ 15; Tidwell Decl. ¶ 10.)

Following the June 2018 meeting, Arctic Cat counsel Brian Tidwell wrote to Nichols, raising again the issue of assignment of patent applications. (Tidwell Decl. ¶ 11, Ex. A.) Upon receiving the letter, Nichols telephoned Tidwell to explain why assigning the patent applications to Arctic Cat was not feasible. (Nichols Suppl. Decl. ¶ 17.) According to Nichols, because Arctic Cat disputed novelty on Speed RMG's designs, a future attempt by Arctic Cat to enforce the patent "would be highly problematic given [Arctic Cat's] documented position that the designs were not novel." (*Id.*) Thus, Nichols proposed that Speed RMG would go forward with the patents and give Arctic Cat an exclusive license. (*Id.*)

After this call, Speed RMG asserts that Arctic Cat's historical issues about the patent application assignment seemed to be resolved. This assertion finds support in the record. On July 31, 2018, the parties met in North Carolina, and Arctic Cat did not raise the patent assignment issue. (Nichols Suppl. Decl. ¶¶ 19-20.) Nor were any issues raised during later communications in which the parties appear to be working together to have Speed RMG apply for the necessary patents. (*Id.* ¶ 21, Ex. 3.)

5

The relationship, however, continued to deteriorate, and in January 2019, Arctic Cat told Speed RMG that while it would sell one of the vehicle models that grew out of the relationship, "there isn't a business case for any of the other models listed in the agreement that justifies moving forward, and we encourage your team to pursue other partners as appropriate. We are not standing in your way." [ECF No. 25 ("Gordon Decl.") ¶ 19, Ex. 3.] The January letter did not raise any issues with Speed RMG's performance. (*Id.*)

Mediation and Subsequent Litigation

The Agreement includes a mediation provision, under which the parties agree to participate in non-binding mediation "before litigation is commenced." (Agreement § 17.) The Agreement also requires timely notice of a material breach and a 30-day cure period. (*Id.* § 9.) A month after receiving Arctic Cat's January letter seeming to end their business relationship, on February 15, 2019, Speed RMG sent Arctic Cat a "further and final notice of material breach of contract," and requested mediation. (Nichols Decl. Ex. 4 ("Notice of Breach and Request for Mediation").) The letter followed the Agreement's requirements. It summarized Speed RMG's allegations of Arctic Cat's breaches and requested "mediation before commencing litigation."[1] (*Id.*) Arctic Cat responded, apparently

---

[1] Speed RMG's Notice of Breach and Request of Mediation has conflicting statements about the timing of mediation. It first states that the request for mediation would be held open for ten days, but closes the letter stating it would be held open for seven days. (Nichols Decl. Ex. 4.) Regardless of this error, the letter unequivocally holds the offer for mediation open for definite time period and reserves the right to initiate litigation.

without suggesting any breach by Speed RMG. (Nichols Decl. Ex. 5.)[2] After some back-and-forth regarding scheduling, the parties agreed to mediate in Texas on March 28, 2019. Then, on the night before mediation after business hours, Arctic Cat sent a letter, which for the first time provided formal notice to Speed RMG of Arctic Cat's position that Speed RMG was in breach. (Tidwell ¶ 14, Ex. C ("Arctic Cat's Notice").) That letter is the only communication communicating Arctic Cat's intent to assert claims against Speed RMG. [ECF No. 26 ("Romano Decl.") ¶ 18; Nichols Decl. ¶ 8.]

The parties unsuccessfully mediated their disputes the next morning. (Tidwell Decl. ¶¶ 13, 15.) That afternoon, after mediation ended, both parties filed suit in their preferred forum. Noteworthy here is that the Agreement does not contain a forum selection clause because during negotiations in 2015, the parties could not agree on one. Arctic Cat advocated for a forum provision setting venue in Minnesota; Speed RMG preferred venue in California. (Nichols Suppl. Decl. ¶ 23.) Arctic Cat's suit, filed here, alleges that Speed RMG breached the Agreement, misappropriated Arctic Cat's intellectual property, violated Arctic Cat's trademark rights, and committed other

---

[2] Exhibit 5 to the Nichols Declaration includes an email from Arctic Cat counsel Brian Tidwell to Steve Nichols, dated February 22, 2019, stating "Attached please find my response to your February 15, 2019 correspondence." The Nichols Declaration (and the rest of the record) does not contain the attachment, but Nichols' next email stated, "Thank you for your letter of February 22 accepting our mediation proposal." (Nichols Decl. Ex. 5.)

7

violations. (*See generally* Compl.) It also asks for a declaratory judgment that Speed RMG, not Arctic Cat, breached the Agreement. Speed RMG filed suit in California district court alleging various breaches under the Agreement. [ECF No. 41 ("Myers Decl.") Ex. A ("Cal. Compl.").] Speed RMG's suit does not request declaratory relief. The complaints were filed almost contemporaneously, with Arctic Cat's filing occurring less than two hours before that of Speed RMG. (*Id.* ¶¶ 5-6, Exs. C-D.)

While the two complaints include different allegations and claims, they substantially overlap, and each are premised on the Agreement. Both parties have filed motions to dismiss based on the first-filed rule. Arctic Cat's motion has been under advisement since June 13, 2019 in California federal court. *See Speed RMG Partners, LLC v. Arctic Cat Sales Inc.*, No. 2:19-cv-02362 (C.D. Cal. 2019) (ECF No. 51 ("On the court's own motion, the Motion to Dismiss or Stay 42 is taken off the 6/20/2019 calendar and placed under submission.")).

**ANALYSIS**

Speed RMG asks the Court to dismiss Arctic Cat's complaint under an exception to the first-filed rule, and in favor of pending parallel litigation in California. It argues that the filing by Arctic Cat was a "pre-emptive strike designed to upend the true plaintiff's choice of forum." [ECF No. 24 ("Def. Br.") at 9 (citing *Fed. Cartridge Co. v. Remington Arms Co.*, No. CIV. 03-6105 ADM/AJB, 2003 WL 23101805, at *2 (D. Minn. Dec.

8

31, 2003).] For its part, having won the race to the courthouse, Arctic Cat urges the Court to apply the first-filed rule, not an exception.

The first-filed rule of federal comity and judicial economy provides "that where two courts have concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Orthmann v. Apple River Campground, Inc.*, 765 F.2d 119, 121 (8th Cir. 1985). The rule "is not intended to be rigid, mechanical, or inflexible, but is to be applied in a manner best serving the interests of justice." *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (citing *Orthmann*, 765 F.2d at 121). Absent compelling circumstances, the first-filed rule should apply. *Id.*

In determining compelling circumstances, the Court must consider the factual circumstances in each case, examining the "entire factual pattern" of the case. *Boatmen's First Nat'l Bank of Kansas City v. Kansas Pub. Emp. Ret. Sys.*, 57 F.3d 638, 641 (8th Cir. 1995). Courts alert to two "red flags" suggesting compelling circumstances exist to deviate from the first-filed rule: first, if the party that filed the first suit was on notice that the other party intended to file its lawsuit imminently, and second, if the first lawsuit was an action for a declaratory judgment. *NW Airlines*, 989 F.2d at 1006.

Arctic Cat, of course, can just barely claim "filed-filed" status. The competing complaints were filed less than two hours apart. (Myers Decl. ¶¶ 5-6, Exs. C-D.) Nonetheless, Arctic Cat technically filed first, and the Court looks to determine whether compelling circumstances subvert the first-filed rule. To do so, the Court examines the

red flags articulated by the Eighth Circuit. The Arctic Cat complaint does not raise the second red flag because is not one only for declaratory judgment—it also seeks substantive damages, including injunctive relief and damages. (Compl.) But a factor to be weighed in examining the entire factual pattern is that Arctic Cat's complaint is the only one to request declaratory relief. As to the first red flag, since both parties raced to the courthouse, the Court draws the fair inference that both parties pre-drafted complaints to file in the event mediation failed.

But Arctic Cat was on notice of impending litigation well before Speed RMG filed suit. The record reflects that Speed RMG notified Arctic Cat of its claims. In February, Speed RMG's Notice of Breach and Request for Mediation explicitly requested "mediation *before commencing litigation* as required by Paragraph 17 of the July 31, 2015 [Agreement]." (Notice of Breach and Request for Mediation at 1, 8–9 (emphasis added).) Speed RMG's logical next step after unsuccessful mediation was to file suit. Arctic Cat was not blindsided. In this regard at least, the facts are similar to those in *Fed. Cartridge Co. v. Remington Arms Co.*, where departure from the first-filed rule was appropriate. 2003 WL 23101805, at *3. In *Fed. Cartridge Co.*, the second-filers sent a cease and desist letter, which provided a deadline for the first-filers to respond. *Id.* The Court determined that "[a]lthough the letter did not explicitly name a forum or date for the suit, inclusion of a precise deadline coupled with the notification" that the second-filers authorized counsel "to pursue all of its legal remedies unless [the first-filers] responded favorably by such

date, provided sufficient notice of imminent legal action." *Id.* Speed RMG's letter likewise provided a deadline to the request for mediation (and before commencing litigation), thereby alerting Arctic Cat of imminent litigation. The absence of notifying which forum and a date certain it would file does not change the result. Rather, Arctic Cat knew that if mediation was unsuccessful Speed RMG's lawsuit was forthcoming and, given Speed RMG's history of venue preference for California, likely anticipated that Speed RMG would file suit in California. (Nichols Decl. ¶ 9, Ex. 5 at 4 (requesting mediation in California); Nichols Suppl. Decl. ¶ 23.)

On the other side, Speed RMG was not similarly on notice of Arctic Cat's lawsuit. Unlike Speed RMG, Arctic Cat did not follow the Agreement's provision on initiating litigation. (*See* Agreement §§ 9, 17; *compare* Final Notice and Request for Mediation, *with* Arctic Cat's Notice.) Arctic Cat never requested mediation, provided Speed RMG with notice and an opportunity to cure, or alerted Speed RMG of possible litigation. (Nichols Decl. ¶ 8.) It was not until the night before mediation— and commencement of this lawsuit—that Arctic Cat sent its formal notice of breach. (Arctic Cat's Notice.) That letter is the only document that indicates Arctic Cat had intentions to assert claims against Speed RMG.

The record supports Speed RMG's position that it was not expecting Arctic Cat's complaint. While the record reflects the parties had ongoing disputes regarding patent assignments and identifying novelty in 2016, it is unclear whether any patent assignment

11

issues remained after 2016. (Okerlund Decl. ¶¶ 7-9, Exs. A-C.) At most, Arctic Cat's new legal counsel revived discussions of the intellectual property issues in the spring of 2018, leading to a July 2018 phone call between counsel. (Tidwell Decl. ¶¶ 10-11, Ex. A; Nichols Suppl. Decl. ¶¶ 15-17.) But there is no evidence that those issues remained unresolved after that. (Nichols Suppl. ¶¶ 19-21, Ex. 3.) Arctic Cat did not raise historical issues during or after the in-person meeting later that July. And Arctic Cat's letter in January 2019 did not mention any outstanding issues. (Gordon Decl. ¶ 19, Ex. 3.) To the contrary, the letter encourages Speed RMG to pursue other partners because Arctic Cat "[is] not standing in [the] way." (*Id.*) The notion that Speed RMG was on notice that Arctic Cat intended to file suit—or even that Arctic Cat had unresolved issues—prior to the night before the mediation and lawsuit finds no support in the record.

All in all, compelling circumstances warrant abrogation of the first-filed rule in this case. Although the Court will not find that Arctic Cat misled Speed RMG "in order to gain the advantages of filing first" or otherwise filed a "surprise complaint despite prior assurances that it would not do so," *Applied Underwriters Captive Risk Assurance Co. v. Charter Oak Oil Co.*, No. 8:17-CV-164, 2018 WL 441347, at *2 (D. Neb. Jan. 4, 2018), Arctic Cat's route to litigation came without warning and contrary to the mandates of the Agreement. And while Arctic Cat may have legitimate claims against Speed RMG, the present circumstances allow the inference that Arctic Cat's lawsuit was not truly

12

contemplated until after it received Speed RMG's Final Notice of Breach and Request for Mediation.

Arctic Cat argues that this result leads to a "first-to-threaten" rule, where the first party to threaten litigation will obtain its choice of forum. [ECF No. 40 ("Pl. Br.") at 30.] This contention reaches too far, as the Court's ruling here does not announce any such rule. The first-filed rule is to be applied "in a manner serving sound judicial administration" and in the interests of justice. *Orthmann*, 765 F.2d at 121. Applying the rule rigidly, as Arctic Cat urges, would be to penalize second-filer Speed RMG for following the procedure set forth in the Agreement, and to reward Arctic Cat for its failure to do the same. The circumstances here make it apparent that Speed RMG's proper notice precipitated Arctic Cat's late notice and first-filed lawsuit. Thus, for the reasons explained above, the California action—which technically lost the race to the courthouse by less than two hours— should take priority. But because Arctic Cat has rightly asserted claims against Speed RMG, the interest of judicial economy will be best served by having the case transferred and consolidated with the California action. *Applied Underwriters*, 2018 WL 441347, at *3 ("in parallel litigation, the second-filed suit can be dismissed, stayed, or transferred and consolidated") (citing *Collegiate Licensing Co. v. Am. Cas. Co.*, 713 F.3d 71, 78 (11th Cir. 2013) and *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 629 (9th Cir. 1991)); *see also Slidell, Inc. v. Archer Daniels Midland Co.,* No. CIV. 02-4841 MJD/JGL, 2003 WL 22050776, at *4 (D. Minn. Sept. 2, 2003) (providing the district court

has discretion to transfer the action involving the same parties and issues to the second action in a different district) (citing *Orthmann*, 765 F.2d at 121; *Monsanto Tech. LLC v. Syngenta Crop Prot., Inc.*, 212 F. Supp. 2d 1101, 1102 (E.D. Mo. 2002)). Finally, because the Court determines transferring the matter to California is appropriate, the Court need not and will not reach Speed RMG's arguments regarding lack of personal jurisdiction, improper venue, standing, and failure to plead with particularity.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendants' Motion to Dismiss [ECF No. 22] is GRANTED in part as to the first-to-file rule and DENIED as moot as to lack of personal jurisdiction and improper venue;

2. Defendants' Motion to Dismiss [ECF No. 29] under Fed. R. Civ. P. 12(b)(6) and 9(b) is DENIED as moot;

3. The foregoing action shall be transferred and consolidated with the action pending in the Central District of California.

Dated: August 16, 2019                                        BY THE COURT:

                                                                          s/Nancy E. Brasel
                                                                          Nancy E. Brasel
                                                                          United States District Judge